UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                                        Case No. 12-32726
                                                              Chapter 13

LORI M. LEE,

    Debtor.

## MEMORANDUM OPINION

Before the court is Steven and Janice Steeles' objection to confirmation of Lori M. Lee's chapter 13 plan. The Steeles contend that Lee's interest in certain realty is solely that of a holdover tenant. Lee, on the other hand, maintains that she has an interest in the property under a contract for deed.

On April 8, 2013, an evidentiary hearing was held to consider the Steeles' objection to confirmation. At that hearing, the Steeles were represented by their counsel, Randy Blake, and Lee was represented by her attorney, Paul D. Esco.

For the following reasons, the Steeles' objection to confirmation of Lee's chapter 13 plan will be sustained, and plan confirmation will be denied.

### Jurisdiction

The court's jurisdiction in this dispute arises from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because plan confirmation is at issue here, this is a core proceeding under 28 U.S.C. § 157(b)(2)(L) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Factual Findings

Janice Steele owned a home located in Montgomery, Alabama at 2017 Palmetto Street. The property was encumbered by a mortgage of Regions Bank. Her husband, Steven Steele, had no ownership interest in that property.

In 1998, Lori Lee and her husband, Dale Lee, who worked for and with Steven Steele, leased the Palmetto Street home from Janice Steele. The lease was an oral one. The monthly rent was $350.

Lee contends that all monthly rent payments between 1998 and 2003 were made in full. The payments, however, were made in cash, and Lee never received receipts from the Steeles evidencing those payments. Therefore, she has no proof that these rent payments were made. The Steeles both testified that the rent payments were never paid in full and were almost always late. They did not support that testimony, however, with any detailed records of Lee's payments.

According to Lee, in 2003 she and her husband had discussions with the Steeles regarding their, the Lee's, purchase of the property. Those discussions, again according to Lee, culminated in the execution of a contract for deed. *See* Creditor's Exhibit II. The Steeles' testimony is strikingly different. They both deny ever discussing any sale of the property with the Lees. Further, they deny seeing the contract for deed, Creditor's Exhibit II, until shortly before the trial of this matter. They deny ever seeing and certainly ever signing the contract for deed.

The alleged contract for deed, Creditor's Exhibit II, was signed by the Lees but not by the Steeles. Lee testified that the contract was prepared by the Steeles, and that the Steeles provided the contract to Lee and her husband. Again, the Steeles deny that they discussed any sale of the property to the Lees much less signed the contract for deed.

Regarding the alleged contract for deed, it provided that the sales price of $30,500, together with interest at 8%, would be paid

over a 174 month term. The monthly payments, which were to begin in August 2003, were in the amount of $342.22 and were comprised of $296.71, principal and interest, and $45.51, escrow for property taxes and insurance.

Further, the alleged contract for deed provided for the transfer of title to the property from the Steeles to the Lees on October 1, 2008. Although Lee maintains that Steele agreed to apply rent payments from the beginning of the lease in 1998 toward the purchase price, title to the property, under the alleged contract for deed, would be transferred to the Lees prior to their completion of payments under the contract, which, again, were to be over a 174 month term (14 ½ years). The Steeles' disavow any knowledge of the alleged contract for deed or a sale of any interest in the property to the Lees.

Steven Steele testified that, due to his frustration over the Lees being habitually late with rent payments and with the fact that the payments were always less than in full, he provided Lee with his mortgage payment book from Regions Bank, the property mortgagee. Illogical as it may seem, Steele testified that he instructed Lee to make future rent payments directly to the Bank and to keep the Bank off his back.[1]

According to Lee, she made monthly payments in their full amount from 2003 through a point in 2010, when she stopped paying completely.[2] Lee contends that some of the payments were made to the Steeles directly and some were made to Regions Bank. All of the payments, however, were made in cash. Since the time that Lee

---

[1] Why Steele believed that having Lee pay the Bank instead of him would solve anything is a mystery. One can only surmise that he believed that what he did not know would not hurt him. In the Court's view, it is bizarre that creditor, who is not being paid by his debtor, would delegate his own duty to pay a creditor to a proven defaulter. Nevertheless, that is exactly what Steele testified that he did.

[2] Lee acknowledged that for a while she paid a lesser amount than the payment provided under the alleged contract for deed. She explained that reduction in the amount of the monthly payment was occasioned by the Steeles no longer carrying insurance on the property.

stopped making regular monthly payments in 2010, her mother-in-law paid two $1,000 payments to the Steeles. The Steeles dispute that Lee has made full payments during this period.

Janice Smith wrote to the Lees regarding the Palmetto Street property. That correspondence which was dated November 9, 2010 provides:

> RE: 2017 PALMETTO STREET
>
> Dear Dale and Louri (sic),
>
> > This letter is to inform you that the payoff balance on the above house is $10,400.00. This payoff is good through December 31, 2010.
> >
> > Also, there is a one time offer for the taxes to be paid in full for 2010 and not due again until December 31,2011. Please contact me at your earliest convenience.
>
> Sincerely
>
> Janice Steele

Creditor's Exhibit I.

Janice Steele testified that the $10,400.00 payoff mentioned in the letter represented the payoff balance on her, Steele's, note with Regions Bank. She denied that the $10,400.00 referenced an amount owed by the Lees under the alleged contract for deed. Lee, however, contends that the $10,400.00 reference in Steele's correspondence concerns the payoff under the alleged contract for deed.[3] Lee's chapter 13 plan recognizes the Steele claim in the amount of $8,400.00. Lee arrived at that amount by reducing the

---

[3] In the Court's view, this is another oddity if one believes the Steeles' testimony. What conceivable reason would Ms. Steele have to advise a mere tenant of the payoff balance and tax information of the realty subject to the leasehold?

$10,400.00 amount by the $2,000.00 paid to the Steeles by Lee's mother-in-law.

Conclusions of Law

The Steeles maintain that the Lees have been holdover tenants since 2010 when they defaulted on their rent payment and thus, the Lee's bankruptcy estate has no interest in the property. Conversely, Mrs. Lee contends that she and her husband have an ownership interest in the property under the contract for deed.

Whether an interest of the debtor's is property of the estate is a federal question. 11 U.S.C. § 541 provides that "property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case." At the same time, it is a fundamental principle of bankruptcy law that "whatever rights a debtor has in property when his bankruptcy petition is filed continue in bankruptcy- no more, no less. Section 541 is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989).

To determine the nature and existence of a debtor's right in property, if any at all, the Court must look to state law. In *Butner v. United States,* 440 U.S. 48 54–55 (1979), the Supreme Court clearly held that "Property rights under section 541 are defined by state law. However, once that determination is made, federal bankruptcy law dictates to what extent the interest is property of the estate." (citing 4 Collier on Bankruptcy ¶541.02)."

There is no dispute that if the Lees have an ownership interest under a valid contract for deed, their legal interest in the house would be property of the estate under § 541. There is likewise no dispute that if the contract for deed, Creditors Exhibit II, is held to be invalid or ineffective, the Lees, having failed to pay rent in more than two years, are mere holdover tenants and the estate has no interest in the property. The question before the Court, then, is whether, under Alabama law, a contract for deed can be valid if it is not signed by the purported seller.

Under Alabama law, any conveyance of land for any term longer than one year is subject to the Statute of Frauds. Section 8-9-2of the Alabama Code contains the statute of frauds and provides, in relevant part:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing…
>
> The Code requirements apply to:
>
>> (5) Every contract for the sale of lands, tenements or hereditaments, or any interest therein, except leases for a term not longer that one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.[4]

§ 8-9-2(5), Ala. Code 1975.

The strict demands of the statute of frauds can be overcome in two instances. First, short-term rental agreements need not be in writing. This exception is not relevant to the case at bar. Second, in those instances where the buyer tenders at least a portion of the purchase price to the seller and the seller puts the purchaser in possession of the land, the contract will be upheld as valid. "If [] the contract has been fully performed, by the seller putting the purchaser in possession under the contract and the purchaser paying the seller a part or all of the purchase price, the contract is valid and is saved by the exception." *Talley v. Talley*, 248 Ala. 84, 87 (1946).

The second exception has been clarified by the Supreme Court

---

[4] In some states, an admission operates to estop a party from raising a Statute of Frauds defense. In Alabama, however, the Supreme Court of has made clear that "a party cannot create an 'estoppel bar to raising the Statute of Frauds merely because a party admits, either judicially or extrajudicially, the existence of or the substance of an oral contract within the Statute.'" *Rice v. Barnes*, 149 F.Supp.2d 1297, 1302 (M.D. Ala. 2001) (*quoting Pate v. Billy Boyd Realty & Constr.*, 699 So.2d 186 (Ala. Civ. App. 1997). Therefore, it is not necessary for the court to determine whether the mortgage payoff letter (Creditor's Exhibit I), operates as some kind of admission.

of Alabama: "To take a case out of the statute of frauds upon the ground of part performance, the act of possession must be clear and definite, and referable exclusively to the contract, and by authority of the vendor."  *Hagood v. Spinks*, 219 Ala. 503, 504 (1929). "[P]ayment and possession must concur to save the purchase from the grasp of the statute".  *Talley v. Talley,* 248 Ala. 84, 88, (1946). In other words, "If the possession …could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires.'"  *Jones v. Jones*, 219 Ala. 62, 64 (1929).

In the case of *Holman v. Childersburg Bancorporation, Inc.*, Mr. and Mrs. Holman purchased 16 acres of land with a $275,000 loan from the First Bank of Childersburg.   852 So.2d 691, 692 (Ala. 2012). The land was subsequently split into three tracts. *Id*.  The Holmans alleged that, in 1997, they entered into an oral agreement with the Bank regarding the tracts.  *Id*.  The Holmans would sell tract I and pay $ 175,000 to the Bank in satisfaction of the Bank's mortgage liens on both tract I and tract II.  *Id*.  The Holmans did in fact sell tract 1 and tendered $175,000.00 to the Bank. The Bank released tract I from its mortgage lien, but it did not release tract II.  *Id*.

The Holmans sued to have the Bank's lien release and  The Bank responded that any agreement was void because it did not satisfy the statute of frauds.  *Id*.  The Holmans countered that they had satisfied the part performance exception to the statute and that the oral agreement should be upheld.  *Id*. at 697.   The court disagreed with the Holmans, holding that the exception applies only where 'the acts of part performance *cannot be explained* consistently with *any other contract* than the one alleged." *Id* at 698 (quoting *Quinlivan v. Quinlivan,* 269 Ala. 642, 645 (1959). Clearly, the Holmans were not put in possession of tract II by the alleged oral agreement because they had been in exclusive possession for two years prior. *Holman v. Childersburg,* 582 So.2d at 699.

In the case at bar, the Lees' position resembles that of the Holmans'.  Like the Holmans', the Lees' contract for deed does not

satisfy the statute of frauds; the Holmans' had no written agreement while the Lees have an unsigned one.  The Lees likewise resemble the Holmans in that both were in possession of the property prior to the alleged date of execution of the contract for deed.   The Lees had been renting the property at issue since 1998, five years prior to the date of the alleged agreement; the Holmans were in exclusive possession of theirs for two years before their alleged agreement. Neither in the Holmans' case nor in the Lees' case did payment and possession concur.  Consequently, neither case meets the exception to the statute of frauds. Therefore, the Lees' contract for deed is invalid.   The Lees take the status of mere holdover tenants and their bankruptcy estate has no interest in the property.

Conclusion

     For the foregoing reasons The Steeles' objection to confirmation is sustained and confirmation is denied.  A judgment in conformity with this memorandum opinion will enter separately.

     Done this 19 day of April, 2013.

                                     /s/ Dwight H. Williams, Jr.
                                     United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 12-32726
 Chapter 13

LORI M. LEE,

   Debtor.

ORDER SUSTAINING OBJECTION,
DENYING CONFIRMATION AND
CONDITIONALLY DISMISSING CASE

In accordance with the Memorandum Opinion entered this day, it is

ORDERED that the Steeles' objection to confirmation is SUSTAINED and that plan confirmation is DENIED. It is

FURTHER ORDERED this case will be dismissed in twenty-eight (28) days, on May 3, 2013, if the debtor does not file an amended plan concordant with the disposition of this matter.

Done this 19 day of April, 2013.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge